Wilhelmina McEWAN, As Executrix of the Estate of Catherine Lavery; Fred McEwan; and Maryellen McEwan, Appellants/Cross–Appellees

v.

EIA PROPERTIES, LLC, Appellee/Cross–Appellant.

Nos. 2012–CA–000804–MR, 2012–CA–000899–MR.

Court of Appeals of Kentucky.

April 4, 2014.

Thomas D. Bullock, J. Ross Stinetorf, Tanner H. Shultz, Lexington, KY, for Appellants/Cross–Appellees.

John N. Billings, Lexington, KY, for Appellee/Cross–Appellant.

Before LAMBERT, TAYLOR, and VANMETER, Judges.

## OPINION

TAYLOR, Judge.

Wilhelmina McEwan, as the Executrix of the Estate of Catherine Lavery, Fred McEwan, and Maryellen McEwan (collectively referred to as appellants) bring Appeal No. 2012–CA–000804–MR and EiA Properties, LLC, brings Cross–Appeal No. 2012–CA–000899–MR from a February 20, 2012, judgment and an April 17, 2012, amended order of the Fayette Circuit Court. We affirm both appeals.

In 1997, Wilhelmina McEwan purchased a home located at 1677 Snow Goose Circle in Lexington, Kentucky (Snow Goose property). Concomitantly thereto, McEwan executed a promissory note in the principal amount of $150,000, plus interest in favor of Ely Place, LTD, on May 22, 1997, and granted a mortgage upon the Snow Goose property to secure the repayment of the note, which was recorded in the Fayette County Clerk's Office on August 11, 1997. Thereafter, on October 15, 2008, McEwan entered into a residential lease of the Snow Goose property with Catherine Lavery, which is the subject matter of this appeal.[1] The lease was for a term of six years and was not recorded. The record also reflects that in 2009, Ely Place executed an Assignment of Promissory Note and Mortgage (assignment) on the Snow Goose property; therein, Ely Place assigned the promissory note and mortgage to EiA Properties. The assignment was recorded

---

1. Catherine Lavery passed away in Camden, South Carolina, on November 11, 2013, during the pendency of this appeal. Wilhelmina McEwan, as executrix of the Catherine Lavery Estate, has been substituted as an appellant in this appeal.

in the Fayette County Clerk's Office on September 1, 2009.

Subsequently, McEwan defaulted upon the repayment terms of the promissory note, and EiA Properties instituted a foreclosure action to enforce its mortgage lien against the Snow Goose property in the Fayette Circuit Court. On January 13, 2011, the circuit court rendered a Final Judgment and Order of Sale in favor of EiA Properties. At the foreclosure sale, the property was sold by the master commissioner to EiA Properties as the high bidder on March 7, 2011. EiA Properties subsequently filed a Motion for Writ of Possession of the Snow Goose Property and a separate Motion To Expedite Execution on Personal Property that remained on the premises at the Snow Goose property after the sale. Wilhelmina asserted that the personalty remaining at the residence belonged to appellants, as tenants. On April 5, 2011, appellants filed a motion to intervene in the foreclosure action, and by order entered April 25, 2011, appellants were permitted to file an intervening complaint. In the intervening complaint, appellants alleged, *inter alias,* that Lavery possessed a valid lease upon the Snow Goose property by virtue of the October 15, 2008, lease agreement, and as a result, Lavery was entitled to immediate possession of the Snow Goose property. As EiA Properties was the new owner of the property, appellants maintained that EiA Properties was bound by the lease and breached its terms by taking possession of the Snow Goose property after the foreclosure sale.

In its February 20, 2012, summary judgment and April 17, 2012, amended order, the circuit court held that as a matter of law the lease was terminated by the foreclosure and sale of the Snow Goose property in 2011. In particular, the circuit court concluded:

The Court finds there is no genuine issue of material fact that Mrs. Lavery's alleged leasehold interest was inferior to EiA's Mortgage, because the Mortgage existed and was filed of record in the Office of the Fayette County Clerk before the alleged Lease was entered into between Ms. Lavery and Defendant Wilhelmina (Combs) McEwan.

. . . .

Therefore, the Court concludes that as a matter of law, Ms. Lavery's alleged leasehold rights in and to the Real Property under Lease, which was inferior to the Mortgage that was foreclosed upon, was terminated by the foreclosure action, Final Judgment, the Master Commissioner's judicial sale, the Master Commissioner's Report of Sale, the Order confirming the Master Commissioner's judicial sale, and the Deed in fee simple by the Master Commissioner to EiA.

These appeals follow.

To begin, summary judgment is proper whether there exists no material issue of fact and where the movant is entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476 (Ky.1991). Since resolution of these appeals are dependent upon purely legal issues, our review proceeds *de novo. Hallahan v. Courier–Journal,* 138 S.W.3d 699, 705 (Ky.App.2004).

### Appeal No. 2012–CA–000804–MR

■ Appellants contend that the circuit court erred by concluding that the foreclosure and sale of the Snow Goose property terminated the October 15, 2008, lease. Specifically, appellants assert that EiA Properties as assignee of the mortgage was bound by the lease agreement. Appellants further argue that a change in ownership of the Snow Goose property through the foreclosure sale did not defeat

Lavery's leasehold interest therein. For the reasons hereinafter stated, we disagree.

▮ In the absence of a written agreement to the contrary, a mortgagor generally retains the right to lease a mortgaged premises, and upon lease thereof, the lessee acquires the mortgagor's right of possession in the premises. Stated simply, the lessee's right of possession is derived from and limited by the mortgagor/lessor's right of possession. In this case, there appeared to be no prohibition on McEwan leasing the property to Lavery in 2008, notwithstanding the property being encumbered by the 1997 mortgage.

▮ As this Commonwealth is a race-notice jurisdiction, a lease is subordinate to a prior and properly recorded mortgage but superior to a subsequently recorded mortgage. *Wells Fargo Bank, Minnesota, N.A. v. Com., Finance & Admin., Dept. of Revenue*, 345 S.W.3d 800 (Ky.2011); *see also* Kentucky Revised Statutes (KRS) 382.270. A lessee's right of possession generally is inferior to a prior recorded mortgage on the leased premises and superior to a subsequently recorded mortgage on the leased premises. Where the lease is later in time, it is "[t]he general rule ... that a subsequent lessee of mortgaged property, taking under a lease from the mortgagor, takes subject to the mortgage." 54 Am.Jur.2d *Mortgages* § 164 (2014); *see also* 5 Tiffany *Real Property* § 1422 (3d ed.2013). Thus, where a subsequent lease is subordinate to a prior and properly recorded mortgage, the lease *ipso facto* terminates in the event of foreclosure and sale of the mortgaged property, whereupon the mortgagor/lessee's right of possession is also terminated at the time of the sale.

Herein, the record clearly reflects that the mortgage upon the Snow Goose property was recorded in the Fayette County Clerk's Office on August 11, 1997, and assigned of record by Ely Place to EiA Properties on September 1, 2009. The lease between McEwan and Lavery was executed on October 15, 2008, over eleven years after the recording of the mortgage. This lease was not recorded nor was EiA given notice of the same until after the foreclosure proceeding was initiated. Lavery also made no attempt to intervene in the action until after the foreclosure sale was completed. It is uncontroverted that the August 11, 1997, mortgage was recorded prior to the execution of the October 15, 2008, lease and Lavery took possession under the lease subject to the mortgage lien. Therefore, any interest she may have acquired under the lease was legally extinguished by the foreclosure sale.

▮ Additionally, we note that the assignment of a mortgage generally does not affect its priority or inferiority as the mortgage's status is determined or fixed upon its initial recording. Upon this issue, we view the Supreme Court of Kansas' opinion in *Bank Western v. Henderson*, 255 Kan. 343, 874 P.2d 632 (1994), as accurately setting forth the law and believe its legal reasoning to be equally applicable in this Commonwealth:

The general rule is that the first to record a mortgage has priority. The priority continues as long as the mortgage is not released. There is nothing in the statutes or case law which indicates that an assignment of a mortgage or the failure to record that assignment somehow affects the priority of the mortgage. An assignment of a mortgage is merely a formal transfer of title to the instrument.

*Bank Western*, 255 Kan. at 348, 874 P.2d at 636 (citation omitted). Therefore, absent contractual language to the contrary, an assignee of a mortgage merely steps

into the shoes of the assignor and succeeds to the assignor's rights. It is axiomatic that an assignee of a mortgage generally succeeds to the priority or inferiority of the originally filed mortgage. Any contention by appellants to the contrary is flawed and without merit.

To summarize, the mortgage on the Snow Goose property was recorded on August 11, 1997, and the mortgage and promissory note were assigned to EiA Properties and recorded on September 1, 2009. The lease was executed between McEwan and Lavery on October 15, 2008, and was not recorded. As the August 11, 1997, mortgage was recorded before the October 15, 2008, lease was executed, the October 15, 2008, lease is subordinate and taken subject to the August 11, 1997, mortgage. The September 1, 2009, assignment of the mortgage did not affect the mortgage's priority in relation to the October 15, 2008, lease. Since the lease was not recorded and EiA was without notice of the same, we conclude that the foreclosure upon the August 11, 1997, mortgage and subsequent sale terminated Lavery's right of possession under the October 15, 2008, lease.

We view appellants' remaining contention of error as moot.

*Cross–Appeal No. 2008–CA–000844–MR*

EiA Properties filed Cross–Appeal No. 2012–CA–000899–MR. EiA Properties admits that the cross-appeal was filed protectively and, by our affirmation of the direct appeal, the cross-appeal is rendered moot.

Hence, we hold that the circuit court properly rendered summary judgment in favor of EiA Properties.

For the foregoing reasons, the judgment and amended order of the Fayette Circuit Court in Appeal No. 2012–CA–000804–MR and Cross–Appeal No. 2012–CA–000899–MR are affirmed.

ALL CONCUR.